Patrick J. DOYLE and H.P. Leasing, Inc., Plaintiffs,

v.

HASBRO, INC., Alan Hassenfeld, Izzi Laudon, Mimi Laudon, David Thibideau, Hugh Maxwell and Michael Oliva d/b/a Transport Services, Defendants,

and

Merrill Lynch, Trustee Defendant.

Civ. A. No. 94–11982–WGY.

United States District Court, D. Massachusetts.

April 19, 1995.

Jeffrey S. Entin, Sahady, Entin & Entin, Fall River, MA, for plaintiffs.

John A. Tarantino, Patricia K. Rocha, Adler, Pollock & Sheehan, Inc., Providence, RI, for defendants Alan Hassenfeld, Hasbro, Inc., Hugh Maxwell.

Neil D. Warrenbrand, Looney & Grossman, Boston, MA, John A. Tarantino, Adler, Pollock & Sheehan, Inc., Stephen H. Burke, Temkin & Stone, Providence, RI, for defendant Izzi Laudon, Mimi Laudon.

John A. Tarantino, Adler, Pollock & Sheehan, Inc., William A. Jacobson, Kaplan, Perry & Jacobson, Inc., Providence, RI, for defendant David Thibodeau.

John A. Tarantino, Adler, Pollock & Sheehan, Inc., John E. Wall, David Shaughnessy, Wall & Shaughnessy, Boston, MA, for defendant Michael Oliva, d/b/a Transport Services.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This is a civil racketeering action brought by a Massachusetts trucking company, H.P. Leasing, Inc. ("Leasing"), and its principal, Patrick J. Doyle (collectively "Doyle"), against the toy manufacturer Hasbro, Inc. ("Hasbro"); Alan Hassenfeld ("Hassenfeld"), Hasbro's President, Chairman of the Board of Directors, and Chief Executive Officer; Israel "Izzi" Laudon ("Laudon"), Vice President of Hasbro's Traffic Department; Laudon's wife, Mimi Laudon; David Thibodeau,[1] Laudon's assistant; Hugh Maxwell, an Executive Vice President at Hasbro; and another trucking concern and its principal, Michael Oliva d/b/a Transport Services ("Oliva"). Doyle alleges in his Amended Complaint that from 1980 to 1992, Laudon and other executives in Hasbro's Traffic Department responsible for contracting for trucking services extorted kickbacks from him and Leasing, in the form of so-called "commissions," in exchange for substantial business from Hasbro. Doyle claims that Leasing was driven out of business in 1993 by the defendants' activity, and seeks damages under federal racketeering law. See 18 U.S.C.A. §§ 1962(c), (d) (West 1984 & Supp.1993). Doyle also asserts various pendent state law causes of action: breach of contract against all defendants (Count I); civil conversion and civil larceny against Laudon, Oliva, and Thibodeau (Count II); intentional and malicious interference with the plaintiff's advantageous business relationships against Laudon, Oliva, and Thibodeau (Count III); intentional infliction of emotional distress against Laudon, Oliva, and Thibodeau (Count IV); fraud, deceit and misrepresentation against Laudon, Thibodeau, Hassenfeld, and Hasbro (Count V); and negligent entrustment or negligent supervision against Hasbro (Count VI).

At a hearing held on February 7, 1995, the Court allowed the motions of certain defendants other than the Laudons to dismiss the federal racketeering claims. Nonetheless, the Court gave Doyle thirty days to file a motion for leave to file an amended complaint. Doyle duly filed such a motion.

Hasbro and Hassenfeld then filed a joint opposition to Doyle's motion and Thibodeau also filed an opposition. Oliva moved to dismiss the Amended Complaint. Pursuant to an agreement between the Court and the parties, the Court treated the oppositions as motions to dismiss the Amended Complaint. At a hearing on the motions on March 27, 1995, the Court dismissed the federal racketeering claims against the moving defen-

---

1. Although spelled "Thibideau" in the caption and throughout Doyle's papers, the Court will employ the presumably correct spelling used by that defendant's own counsel: Thibodeau.

dants, Hasbro, Hassenfeld, Oliva, and Thibodeau (collectively, "movants"), but retained jurisdiction over those defendants' state law claims. The Court took under advisement the movants' motions to dismiss the state claims, and hereby allows those motions, with one exception, for the reasons set forth below.

## I. Count I

 Doyle has not stated a claim for breach of contract against any of the movants. Their allegations do not state with sufficient clarity the nature of the contract claimed to have been breached, its terms, the duties allegedly imposed upon each of the defendants, their failure to perform those duties, or damages attributable to the alleged breach. *See Telephone Answering Serv. of Boston, Inc. v. New England Tel. & Tel. Co.,* 358 Mass. 822, 823, 267 N.E.2d 918 (1971) (rescript); *Singarella v. City of Boston,* 342 Mass. 385, 387, 173 N.E.2d 290 (1961) (Kirk, J.); *see also Petricca v. Simpson,* 862 F.Supp. 13, 17 (D.Mass.1994) (Gorton, J.). A conclusory allegation of the existence of a long-term "contractual relationship" is insufficient. Doyle's twice-stated assertion [2] that all he must do to state a cause of action for breach of contract is to "put the defendants on notice of a contractual relationship" is flatly incorrect under Massachusetts pleading requirements.

 The individual movants are also shielded from liability on Count 1, even if such a cause of action were stated, because an agent for a disclosed principal, i.e. an employee acting on behalf of an employer, cannot be personally liable on the principal's contract. *See Byors & Sons, Inc. v. Board of Water Comm'rs of Northborough,* 358 Mass. 354, 362, 264 N.E.2d 657 (1970) (Tauro, C.J.); *Porshin v. Snider,* 349 Mass. 653, 655, 212 N.E.2d 216 (1965) (Spalding, J.); *see also Paterson–Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.,* 840 F.2d 985, 993 (1st Cir.1988).

## II. Count II

 Count II charges Laudon, Oliva and Thibodeau with "civil conversion and civil larceny." Although the plaintiffs failed in their briefs to oppose the motions to dismiss as they pertain to Count II, the Court must nonetheless apply the appropriate legal standard to determine whether Count II has been properly plead. *See Hall v. Gonfrade,* No. 93–2368, 1994 WL 527165, at *1 (1st Cir. Sept. 29, 1994). To state a cause of action for conversion under Massachusetts law, a plaintiff must plead that (1) the defendant intentionally and wrongfully exercised control or dominion over personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused. *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops,* 4 F.3d 90, 95 (1st Cir.1993) (citing *Magaw v. Beals,* 272 Mass. 334, 172 N.E. 347 [1930] ). Doyle fails to allege that he had any ownership or possessory interest in any property over which the defendants wrongfully exercised control. One who pays kickbacks or bribes relinquishes the property interest in the funds necessary to sustain an action for conversion. *Cf. Clark v. United States,* 102 U.S. 322, 331–32, 26 L.Ed. 181 (1880) (briber may not recover money paid); *United States v. Thomas,* 75 F.2d 369, 371 (5th Cir.1935) (same); *United States v. Farino,* 483 F.Supp. 651, 652 (E.D.N.Y.), *aff'd,* 633 F.2d 207 (2d Cir.1980) (government, as possessor or recipient of bribe paid to federal agent, entitled to keep the money as its possessory right is stronger than the rights of the briber). To allow the plaintiffs' conversion claim to go forward would undermine the venerable principle that a court should not aid either party to an illegal contract. *See St. Louis, Vandalia and Terre Haute R.R. v. Terre Haute and Indianapolis R.R.,* 145 U.S. 393, 407, 12 S.Ct. 953, 957, 36 L.Ed. 748 (1892); *Farino,* 483

---

2. Plaintiff's Memorandum in Opposition to Defendants Hasbro and Alan Hassenfeld's (sic) Opposition to Plaintiffs' Amended Complaint at 17;

Plaintiff's Memorandum in Opposition to Defendant David Thibideau's (sic) Opposition to Plaintiffs' Amended Complaint at 4.

**40**

F.Supp. at 652.[3] Therefore, the conversion count must be dismissed as to Oliva and Thibodeau.

■ The "civil larceny" claim meets a similar fate. The Court is unaware of any such common law cause of action recognized in the Commonwealth of Massachusetts, and Doyle has not attempted to assist the Court in its search. As defendant Thibodeau points out, the statutory civil cause of action for larceny applies only in limited circumstances not here present. *See* MASS.GEN.LAWS ANN. ch. 231, § 85R½ (West Supp.1994); MASS.GEN. LAWS ANN. ch. 266, § 30A (West 1990). Count II must therefore also be dismissed to the extent it attempts to state a civil cause of action for larceny.

### III. Count III

■ Doyle's cause of action against Thibodeau and Oliva for "intentional and malicious interference" with their advantageous business relationships may not be maintained. The governing principle behind the tort sought to be asserted here is that "one who, without a privilege to do so, induces or otherwise purposely causes a third person ... not to enter into or continue a business relation with another is liable to the other for the harm caused thereby." *Owen v. Williams,* 322 Mass. 356, 360, 77 N.E.2d 318 (1948). Doyle must plead and prove that the defendants (1) engaged in intentional and willful acts (2) calculated to cause damage to the plaintiffs' lawful business (3) with an unlawful purpose and without right or justification, (4) thereby causing actual damage or loss. *Walker v. Cronin,* 107 Mass. 555, 562 (1871); *Chemawa Country Golf, Inc. v. Wnuk,* 9 Mass.App.Ct. 506, 509–10, 402 N.E.2d 1069 (1980).

■ Doyle apparently alleges that Oliva and Thibodeau wrongfully and with an improper purpose interfered with the business relationship, whether contractual or otherwise, between Hasbro and him, causing the relationship to terminate and Leasing to close its doors. Such a charge may not proceed against Oliva, as no conduct of his is

alleged to have occurred after 1989, several years before the remaining defendants supposedly drove Leasing into bankruptcy and then out of business. Furthermore, Thibodeau, Laudon's assistant, cannot be considered a third party interfering with the relationship between his employer, Hasbro, and the plaintiffs. As an alternative grounds for dismissal, the "lawful business" element of the tort is lacking, as Doyle essentially argues that the defendants interfered with and put an untimely end to an unlawful kickback scheme in which he and Leasing were, for a lengthy period, willing participants. For these reasons, Count III must also be dismissed as to Thibodeau.

### IV. Count IV

■ Count IV charges Laudon, Oliva and Thibodeau with the intentional infliction of emotional distress. Like many plaintiffs before them, and no doubt, to the Court's distress, many more as yet unborn, Doyle includes an intentional infliction claim without alleging facts sufficient to prove each element of the tort. *See Agis v. Howard Johnson Co.,* 371 Mass. 140, 144–45, 355 N.E.2d 315 (1976) (citing RESTATEMENT [SECOND] OF TORTS § 46 [1965] ). Assuming the truth of all the allegations in the Amended Complaint, the conduct complained of does not as matter of law amount to extreme and outrageous behavior "beyond all possible bounds of decency" and which are "utterly intolerable in a civilized community." *Id.* at 145, 355 N.E.2d 315. Nor has Doyle even attempted to plead severe distress of a nature "that no reasonable [person] could be expected to endure it." *Id.* Count IV is therefore dismissed as to Oliva and Thibodeau.

### V. Count V

■ Count V states that the conduct of Laudon, Thibodeau and Hassenfeld constituted fraud, deceit and misrepresentation for which they and Hasbro are liable. To recover under these related torts, Doyle must show that the defendants made a false repre-

---

**3.** Although the Court need not decide the issue, the affirmative defense of unclean hands may also be available in this case to bar recovery for conversion. *See Unilogic, Inc. v. Burroughs Corp.,* 10 Cal.App.4th 612, 12 Cal.Rptr.2d 741, 745 (1992).

sentation of material fact with knowledge of its falsity for the purpose of inducing him to take action, and that he reasonably relied upon the representation to his detriment. *See Danca v. Taunton Sav. Bank*, 385 Mass. 1, 8, 429 N.E.2d 1129 (1982) (Lynch, J.); *Saxon Theatre Corp. of Boston v. Sage*, 347 Mass. 662, 666–67, 200 N.E.2d 241 (1964) (Spalding, J.); *Barrett Assocs., Inc. v. Aronson*, 346 Mass. 150, 152, 190 N.E.2d 867 (1963) (Spalding, J.); *Adams v. Hyannis Harborview, Inc.*, 838 F.Supp. 676, 694 (D.Mass.1993) (Gorton, J.); *Elias Bros. Restaurants, Inc. v. Acorn Enters., Inc.*, 831 F.Supp. 920, 922 (D.Mass.1993) (Collings, M.J.). The Amended Complaint fails to set forth facts sufficient to prove all of these elements as to each of Hassenfeld, Oliva and Thibodeau.

█ As to Hassenfeld, Doyle relies on allegations that Hassenfeld directed in November, 1992, that Doyle receive a certain amount of business from Hasbro, and that sometime after February 1, 1993, Hassenfeld promised that Doyle's son, the owner of a contract carrier in the State of Washington, "would be taken care of" and continue to receive business from Hasbro. Amended Complaint ¶¶ 37, 41. Doyle never avers, directly or indirectly, that Hassenfeld did not intend at the time the statement was made for Doyle and Leasing to receive that level of promised business. In fact, Doyle even admits that Hassenfeld's directive "seemed like an effort to right a wrong" done to him. *Id.* ¶ 37. Nor does Doyle assert that he took any action in reasonable reliance on Hassenfeld's order to his detriment—the business simply never materialized, depriving Doyle of an opportunity to derive further income from Hasbro. The statement regarding Doyle's son is similarly deficient: Doyle fails to allege reasonable reliance resulting in damage. For these reasons, Count V must be dismissed as to Hassenfeld.

█ Nor may Count V be maintained against Thibodeau. None of the statements attributed by Doyle to Thibodeau constitute representations of material fact upon which Doyle relied to his detriment. *See* Amended Complaint ¶¶ 22 (Thibodeau allegedly demanded payments or gifts), 32 (Thibodeau allegedly told Doyle that Laudon was giving business to other carriers and there was nothing Thibodeau could do about it), 38 (Thibodeau allegedly told Doyle that Leasing would be required to maintain a 95% efficiency rating). As Doyle attributes no statements at all to Oliva, who is alleged to have acted as a mere bookkeeper and conduit for the payments to Laudon, the fraud claim cannot proceed against Oliva. *See id.* ¶¶ 13, 17, 20, 21 (detailing alleged payments made to Oliva) and ¶ 19 (payments allegedly "monitored" by Oliva, who "muscled" his way into Leasing's operations). Finally, to the extent that Doyle claims that Hassenfeld, Thibodeau and Oliva were part of a larger conspiracy to defraud him, the conclusory allegations throughout the Amended Complaint are insufficient under the strict requirement under Fed.R.Civ.P. 9(b) that fraud be plead with particularity. *See, e.g., id.* ¶ 24 (defendants "worked closely together and were aware of the others' conduct.... It is not certain what the specifics of the conspiracy entailed or how exactly defendants Thibideau (sic) and Hassenfeld benefitted.... Each defendant must have had knowledge of the entire conspiratorial sweep or be acquainted with all other defendants.... They not only were all acquainted, but operated as one unit, with knowledge of each others (sic) activity, to serve the purposes, and for the benefit of, Hasbro."); *see also Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 360 (1st Cir.1994). Count V thus must be dismissed against Thibodeau and Oliva as well.

█ Hasbro's potential liability under Count V is more problematic. Given the foregoing, no liability may be premised on the conduct of Hassenfeld, Thibodeau or Oliva.[4] However, as the Court does not here determine whether the Amended Complaint states a fraud cause of action against Laudon, and Laudon has not yet moved to dismiss or for summary judgment, the Court will deny Hasbro's motion to dismiss Count V and revisit the issue in connection with Laudon's conduct at the appropriate time.

---

4. As there is no allegation that Oliva was ever employed by Hasbro, the company may not be liable for his conduct even if a claim were to survive against Oliva.

## VI. Count VI

Doyle concludes his state law causes of action with a claim against Hasbro and Hassenfeld for "negligent supervision" or "negligent entrustment." Neither survives.

■ It is true that Massachusetts permits recovery for negligent entrustment, under which a "supplier may be liable for harm caused after the supplier has knowingly placed property in the hands of an incompetent person," where the incompetent person's use of the property causes damage. *Kyte v. Philip Morris Inc.*, 408 Mass. 162, 169, 556 N.E.2d 1025 (1990) (citing *Leone v. Doran*, 363 Mass. 1, 13 & n. 3, 292 N.E.2d 19 [1973] ). The doctrine has primarily been used in cases where a defendant has entrusted a motor vehicle to a person actually known by the entrustor to be unfit or incompetent to use it properly, and injury to a third party arises from that use. *See, e.g., Mitchell v. Hastings & Koch Enters., Inc.*, 38 Mass.App.Ct. 271, 277–79, 647 N.E.2d 78, 82–84 (1995).

■ Doyle asserts that negligent entrustment applies to this case under *Bernstein v. IDT Corp.*, 582 F.Supp. 1079, 1085–86 (D.Del.1984). In that case, the court declined to dismiss a claim of negligent entrustment where the plaintiff alleged that General Dynamics had negligently or recklessly entrusted its executives with positions of authority enabling them to extort kickbacks. Doyle's reliance on *Bernstein* is misplaced for several reasons. First, that court did not deny the motion to dismiss upon careful examination, but merely concluded that it would be a "mistake" to "prevent the plaintiff from further development of a record in support" of his theory. *Id.* at 1086 (citing 2 RESTATEMENT [SECOND] OF TORTS § 307). Second, and with all due respect to the Delaware District Court, this Court is bound by the pronouncements of the Supreme Judicial Court of Massachusetts, which would not, in my opinion, allow this case to proceed on a negligent entrustment theory. This Court will adhere to the settled principle that a federal district court sitting in diversity will not blaze paths as yet untrod by the courts of the state whose law it is obligated to apply. *See In re San Juan Dupont Plaza Hotel Fire Lit.*, No. 94–1009, 1994 WL 697271, at *1 (1st Cir. Dec. 14, 1994) (per curiam); *Kassel v. Gannett, Inc.*, 875 F.2d 935, 949 (1st Cir.1989). Equating the placement of a corrupt person in a position of authority from whence he may wreak havoc on the general public with a father turning over the keys to the family car to his unlicensed, irresponsible daughter may have some superficial intellectual attraction, but it is not for this Court to affix its imprimatur on such an extension without further guidance from the Supreme Judicial Court.

■ The gravamen of Doyle's negligent supervision claim is that had Hasbro properly supervised Laudon and others, there would have been no extortion and Doyle would have been able to do business with "competent, responsible and honest" employees. Defendants accurately term this theory bizarre: had Hasbro properly supervised its employees, there is no evidence that Doyle ever would have received any business from Hasbro for which he would have had to pay kickbacks. Doyle thus cannot demonstrate that he was "damaged" as a result of this allegedly negligent supervision. Furthermore, although the Supreme Judicial Court may recognize the tort of negligent supervision in some circumstances, see, e.g., *Worcester Ins. Co. v. Fells Acres Day School, Inc.*, 408 Mass. 393, 407, 558 N.E.2d 958 (1990); *Doe v. Town of Blandford*, 402 Mass. 831, 834, 525 N.E.2d 403 (1988), Doyle has not brought to the Court's attention a case demonstrating or even suggesting that the contours of that doctrine in this Commonwealth would cover the situation presented here. Given the anti-trailblazing principle cited above, Doyle's negligent supervision claim must be dismissed as well.

## VII. Conclusion

All state law claims asserted in Counts I through VI of the Amended Complaint are hereby dismissed as to defendants Hassenfeld, Oliva, and Thibodeau. As the RICO claims against those defendants were dismissed from the bench on March 27, 1995, Hassenfeld, Oliva, and Thibodeau are dismissed from the case. Counts I and VI are

also dismissed as to Hasbro. Count V is dismissed as to Hasbro to the extent liability is premised on the conduct of Hassenfeld, Oliva, and Thibodeau, but may proceed to the extent premised on the conduct of the remaining defendants.

It is so ordered.